UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 4:04 cr 285 MLM |
| | ) | |
| v. | ) | |
| | ) | |
| SAL'S PRODUCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PLEA AGREEMENT,**
**GUIDELINES RECOMMENDATIONS AND STIPULATIONS**

Come now the parties pursuant to Section 6B1.4, Sentencing Guidelines and Policy

Statements (October 1987), and the Administrative Order of this Court (January 2, 1991) and

hereby stipulate and agree that the following are the parties' agreements, recommendations and

stipulations:

**1.    THE PARTIES.**

The parties to the agreements, recommendations and stipulations contained herein are the

defendant SAL'S PRODUCE, INC., defense counsel Bevis Schock, and the Office of the United

States Attorney for the Eastern District of Missouri (hereinafter the Government).  This

document and the agreements, recommendations and stipulations contained herein do not, and

are not intended to, bind any governmental office or agency other than the United States Attorney

for the Eastern District of Missouri.  It is understood by the parties that the Court is neither a

party to nor bound by these agreements, recommendations and stipulations.

## 2.    THE PLEA AGREEMENT.

### A.    The Plea.

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the

defendant's voluntary plea of guilty to Counts One (1) through Three (3) of the Information, the

Office of the United States Attorney for the Eastern District of Missouri agrees that no further

federal prosecution will be brought in this District relative to the defendant's violations of the

Federal Meat Inspection Act (FMIA) and the Poultry Products Inspection Act (PPIA), of which

the Office of the United States Attorney for the Eastern District of Missouri is aware at this time.

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant fully

understands that there will be no right to withdraw the plea entered under this agreement, except

where the Court rejects those portions of the plea agreement which deal with charges the

Government agrees to dismiss or not to bring.

### B.    Waiver of Post-Conviction Rights:

**(1)    Appeal.**  The defendant has been fully apprised by defense counsel of the

defendant's rights concerning appeal and fully understands the right to appeal the sentence under

Title 18, United States Code, Section 3742.  However, in the event the Court accepts the plea, as

part of this agreement, both the defendant and the Government hereby waive all rights to appeal

all non-jurisdictional issues including, but not limited to: any issues relating to pre-trial motions,

hearings and discovery; any issues relating to the negotiation, taking or acceptance of the guilty

plea or the factual basis for the plea; whatever sentence is imposed; and any issues relating to the

establishment of the Total Offense Level or Criminal History Category determined by the Court,

except that the parties reserve the right to appeal from any Chapter 5 upward or downward

2

departure from the Guidelines range if such departure is not agreed to in this document. The parties understand that the District Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document. The Guidelines range will be determined by the District Court and shall not be subject to appeal; and

**(2)** *Habeas Corpus.* The defendant acknowledges being guilty of the crimes to which a plea is being entered, and further states that neither defense counsel nor the Government have made representations which are not included in this document as to the sentence to be imposed. The defendant further agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

## C. Financial Disclosure.

The defendant agrees to complete and sign financial forms as required by the United States Probation Office prior to sentencing, including:

(1) A Net Worth Statement (Probation Form 48);

(2) A Net Worth Short Form Statement (Probation Form 48 EZ);

(3) A Cash Flow Statement (Probation Form 48B);

(4) A Declaration of Defendant or Offender Net Worth and Cash Flow Statements (Probation Form 48D); and

(5) A Customer Consent and Authorization for Access to Financial Records (Probation Form 48E).

The defendant also agrees to complete and sign financial forms, including a Customer Consent

3

Authorization for Access to Financial Records During Supervision (Probation Form 48I), as

required by the United States Probation Office during the defendant's term of supervised release

or probation. The defendant agrees to provide complete, truthful and accurate information on

these forms and consents to the release of these forms and any supporting documentation by the

United States Probation Office to the Government.

      **D.**      **Civil or Administrative Actions not Barred; Effect on Other Governmental**

**Agencies.**

The defendant has discussed with defense counsel and understands that nothing contained

in this document is meant to limit the rights and authority of the United States of America to take

any civil, tax or administrative action against the defendant including, but not limited to, asset

forfeiture, deportation and any listing and debarment proceedings to restrict rights and

opportunities of the defendant to contract with government agencies. Further, any

recommendation in this document as to the amount of loss or restitution is not binding upon the

parties in any civil or administrative action by the Government against the defendant.

**3.**      **GUIDELINES RECOMMENDATIONS (NOT BINDING ON THE COURT).**

      **A.**      **Manual to be Used.**

The parties recommend that the November 2003 version of the Guidelines Manual

applies.

      **B.**      **Chapter 8 Recommendations:**

            **(1)**      **Remedial Order.**

The parties recommend that the Court impose the following remedial order as a

condition of probation: SAL'S PRODUCE, INC., and any business owned, operated or

4

controlled by the current owners and officers of SAL'S PRODUCE, INC., and that holds,

prepares, packages or sells meat and poultry products, shall implement and adhere to, for a term

of three (3) years following the date of sentencing, a program of food safety compliance

approved by an independent and recognized food safety company or institution, acceptable to the

Office of the United States Attorney for the Eastern District of Missouri;

      **(2)    Fine.**

      The parties recommend that the Court impose a fine of $5,000, pursuant to

Sections 8C2.4 through 8C2.8. The Government recommends that payment of the fine should be

due immediately, upon sentencing, pursuant to Section 8C3.2 and that the fine not be reduced

pursuant to Section 8C3.3. The parties further recommend that the total fine to be imposed on

defendant Rosina B. Inserra Meyer and defendant Sal's Produce, Inc. not exceed a total of

$10,000.

      **C.    Acceptance of Responsibility.**

      The parties recommend that two levels should be deducted pursuant to Section 3E1.1(a)

because the defendant has clearly demonstrated acceptance of responsibility.

      The parties agree that if the defendant does not abide by all of the agreements made

within this document, the defendant's failure to comply is grounds for the loss of acceptance of

responsibility pursuant to Section 3E1.1. The parties further agree that the defendant's eligibility

for a reduction pursuant to Section 3E1.1 is based upon the information known at the present

time and that any actions of the defendant which occurs or which becomes known to the

Government subsequent to this agreement and are inconsistent with the defendant's acceptance of

responsibility including, but not limited to criminal conduct, are grounds for the loss of

5

acceptance of responsibility pursuant to Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**D.      Criminal History.**

The determination of the defendant's Criminal History Category shall be left to the Court after it reviews the Presentence Report. The Criminal History Category determination will be made only after the United States Probation Office obtains and evaluates the records it can find of the defendant's criminal history. Prior convictions can affect the sentence and usually result in a harsher sentence. Both parties retain their right to challenge the finding of the Presentence Report as to the defendant's criminal history and the applicable category, however all decisions as to the appropriate Criminal History Category by the Court are final and not subject to appeal.

Both parties are aware that the results of a preliminary criminal record check are available for review in the Pretrial Services Report.

**E.      Acknowledgment of Effect of Recommendations.**

These recommendations have been made pursuant to Rule 11(c)(1)(B), Federal Rules of Criminal Procedure. The parties have addressed United States Sentencing Guidelines (Guidelines) applications to this case and have agreed to these recommendations. The parties agree that these recommendations fairly and accurately set forth the Guidelines levels and calculations which the parties believe the Court should use in determining the defendant's sentence.

The parties acknowledge that the Guidelines application recommendations set forth herein are the result of negotiations between the parties as to the Guidelines applications they address; that these negotiated recommendations led to the guilty plea in this case; and that each

6

party has a right to rely upon and hold the other party to the recommendations at the time of

sentencing. The parties further agree that neither party shall request a departure pursuant to any

chapter of the Guidelines unless that departure or facts which support that departure are

addressed in this document or the request is made with the consent of both parties.

The parties recognize that they may not have addressed or foreseen all the Guidelines

provisions applicable in this case. Guidelines applications not expressly addressed by the parties'

recommendations, but which are addressed by the Presentence Report or the Court, may be

presented to the Court for consideration. The parties agree and understand that the Court, in its

discretion, may apply any Guidelines not addressed in this document.

Furthermore, this Court is not bound by these recommendations. The refusal of this

Court to follow the recommendations of the parties shall not serve as a basis to withdraw the

plea. The parties acknowledge that the Court's decision as to the appropriate Guidelines levels

and calculations will govern at sentencing and could vary upward or downward from the parties'

recommendations stated in this document and that the Court's decision is not subject to appeal.

## 4.    STIPULATION OF FACTS RELEVANT TO SENTENCING.

The parties stipulate and agree that the facts in this case are as follows and that the

Government would prove these facts beyond a reasonable doubt.

A.    At all relevant times, Sal's Produce, Inc. (Sal's Produce), was a corporation

organized and existing under the laws of the State of Missouri and engaged in the sale of meat

and meat products and poultry and poultry products (hereinafter meat and poultry products),

among other items, with its corporate headquarters located at 3701 Taft Avenue, St. Louis,

Missouri 63116-4325.

7

B.      At all relevant times, Sal's Produce operated a retail food store located within

Soulard Farmer's Market, 730 Carroll Street, St. Louis, Missouri, 63104, as a leaseholder of

Booth #100.

C.      At all relevant times, Rosina B. Inserra Meyer was the retail store manager of

Sal's Produce.

### Inspections at the Retail Store

D.      On or about December 19, 2001, compliance officers from the United States

Department of Agriculture, Food Safety & Inspection Service, Compliance & Investigation

Division (hereinafter USDA compliance officers) conducted a compliance review at Sal's

Produce. After the review, the compliance officers informed the retail store manager, Rosina B.

Inserra Meyer, of the violations. During the review, USDA compliance officers observed and

photographed the following conditions to include, but not limited to:

(1)      Adulterated meat and poultry products and other food products consisting of

putrid, sour, moldy, odorous and rodent defiled items to include, but not limited to: salami;

bacon; ground beef patties; sour cream; beef and bean burritos; flapsticks (ground pork wrapped

in pancake batter); Cappacola hams; french toast; hot dogs; syrup; chocolate flavored fudge;

chicken fritters; chicken breast fillets; smoked sausage; pepperoni; and corned beef;

(2)      Meat and meat products damaged due to gnawing by unknown animal in the

cooler;

(3)      A dead mouse found in the cooler;

(4)      Rodents feces (excreta pellets) found on floor and on packaging of meat and meat

products in the cooler to include, but not limited to ham and bacon;

8

(5)     Crushed, leaking and rodent defiled boxes containing meat and poultry products,

fresh produce and other food products in the cooler;

(6)     Heavy buildup of food residue on the floor in the cooler and in the store;

(7)     Meat and poultry products on rusty storage racks in the cooler;

(8)     Meat and poultry products stored at times without any labeling or packaging to

include, but not limited to bacon;

(9)     Areas providing harborage to rodents outside and within the facility including, but

not limited to floors under pallets, trash and debris; and

(10)    Cooler ceilings, walls and overhead cooling unit covered with mold and rust.

E.     On or about December 19, 2001, USDA compliance officers detained 2500

pounds of federally inspected meat and poultry products and other food products, that were

adulterated and held at Sal's Produce. The detained meat and poultry products and other food

products were later destroyed and described to include, but not limited to:

(1)     Salami in a plastic casing gnawed through by an unknown animal;

(2)     Unwrapped bacon contaminated with excreta pellets and gnawed by an unknown

animal;

(3)     Bacon and bacon packing boxes contaminated with excreta pellets;

(4)     Ground beef patties contaminated with excreta pellets and ground beef packing

boxes gnawed by an unknown animal;

(5)     Pails of sour cream covered by excreta pellets;

(6)     Beef and bean burritos and burrito packing boxes covered with blue mold;

(7)     Flapsticks and flapstick packing boxes gnawed by an unknown animal;

9

(8)     Cappacola hams packaging contaminated with excreta pellets;

(9)     Plastic bags of french toast covered with excreta pellets; and

(10)    Hot dogs in plastic wrap contaminated with excreta pellets and hot dog packing

boxes covered on the outside and inside with excreta pellets.

F.      On or about January 11, 2002, USDA compliance officers conducted a

compliance review of Sal's Produce, where they observed and photographed the following

conditions to include, but not limited to:

(1)     A dead rodent in an open box next to retail display counter;

(2)     Syrup bottles in packing box gnawed by an unknown animal containing excreta

pellets, nesting materials and a dead rodent;

(3)     Chocolate flavored fudge cans in packing box gnawed by an unknown animal

containing excreta pellets, nesting materials and labels gnawed from cans; and

(4)     Possible rodent entry and exit points through gaps between the floor and exterior

and interior walls of the cooler.

G.      On or about October 30, 2003, USDA compliance officers again conducted a

compliance review of Sal's Produce, where they observed rodent droppings on the floor inside

the freezer.

H.      At all the times described above, the defendant held meat and poultry products

under insanitary conditions whereby it may have become contaminated with filth, or whereby it

may have been rendered injurious to health.  The meat and poultry products had been federally

inspected and transported in commerce.

I.      At all the times described above, the retail store manager, Rosina B. Inserra

10

Meyer, was in a responsible position relative to the meat department and could have prevented or corrected the insanitary conditions that caused federally inspected meat and poultry products to become adulterated with filthy, putrid and decomposing substances or otherwise unsound, unhealthful, unwholesome or otherwise unfit for human food.

J.      The defendant and the Government agree that the facts set forth above are true and may be considered as "relevant conduct" pursuant to Section 1B1.3.

## 5.      ELEMENTS OF THE OFFENSE.

As to Counts One (1) and Three (3) the defendant admits to knowingly violating Title 21, United States Code, Section 601(m)(3) and 610(d), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(A)      The defendant caused meat and meat products to become adulterated in that the meat and meat products were held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health;

(B)      The meat and meat products were federally inspected;

(C)      The meat and meat products had been transported in commerce; and

(D)      The retail store manager, Rosina B. Inserra Meyer, was in a responsible position and could have prevented or corrected the violation of federal food laws.

As to Count Two (2) the defendant admits to knowingly violating Title 21, United States Code, Section 453(g)(3) and 458(a)(3), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(A)      The defendant caused poultry and poultry products to become adulterated in that the poultry and poultry products were held under insanitary conditions whereby it may have

11

become contaminated with filth, or whereby it may have been rendered injurious to health;

      (B)     The poultry and poultry products were federally inspected;

      (C)     The poultry and poultry products had been transported in commerce; and

      (D)     The retail store manager, Rosina B. Inserra Meyer, was in a responsible position

and could have prevented or corrected the violation of federal food laws.

## 6.    PENALTIES.

### A.    Statutory Penalties.

The defendant fully understands that the maximum possible penalty provided by law for

the crime to which the defendant is pleading guilty is a term of probation of not more than five

(5) years, pursuant to Section 8D1.2(a)(2), and a fine of not more than $200,000, or both.

Because the defendant is a business entity, the parties acknowledge that a term of imprisonment

followed by a term of supervised release would not apply to this defendant.

### B.    Sentencing Guidelines Effect on Penalties.

The defendant understands that this offense is subject to the provisions and Guidelines of

the "Sentencing Reform Act of 1984," Title 18, United States Code, Sections 3661 *et. seq.* and

Title 28, United States Code, Section 994.

### C.    Mandatory Special Assessment.

The defendant further acknowledges that this offense is subject to the provisions of the

Criminal Fines Improvement Act of 1987 and that the Court is required to impose a mandatory

special assessment of $125 per count for a total of $500, because the offense conduct involves a

Class A misdemeanor by a corporation pursuant to 18 U.S.C. § 3013(a)(1)(B)(iii), U.S.S.G. §

8E1.1 note 2(B).  The defendant agrees to pay the special assessment at the time of the

12

sentencing. The defendant further agrees that if the mandatory special assessment imposed by

the Court is not paid at the time of sentencing, until the full amount of the mandatory special

assessmetn is paid, money paid by the defendant toward any fine imposed by the Court shall be

used to pay the mandatory special assessment.

## 7.    FINES, RESTITUTION AND COSTS.

The defendant understands that the Court may impose a fine, restitution (in addition to

any penalty authorized by law). The defendant agrees that any fine or restitution imposed by the

Court will be due and payable immediately.

### A.    Restitution.

The defendant further acknowledges that pursuant to Title 18, United States Code,

Section 3663A, an order of restitution is mandatory in this case for all crimes listed in Section

3663A(c) committed after April 24, 1996. The defendant agrees that regardless of the particular

counts of conviction, the amount of mandatory restitution imposed shall include all amounts

allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all

relevant conduct loss. Because of the difficulty of identifying
victims, the government is not requesting restitution DLN NDS

### B.    Effect of Bankruptcy on Fines or Restitution.

The defendant hereby stipulates that any fine or restitution obligation imposed by the

Court is not dischargeable in any case commenced by the defendant or the defendant's creditors

pursuant to the Bankruptcy Code. The defendant agrees not to attempt to avoid paying any fine

or restitution imposed by the Court through any proceeding pursuant to the United States

Bankruptcy Code, and stipulates that enforcement of any fine or restitution obligation by the

United States or a victim is not barred or affected by the automatic stay provisions of the United

13

States Bankruptcy Code (Title 11, United States Code, Section 362).

## 8.    ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS.

The defendant acknowledges and fully understands the following rights: the right to
plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right
to file pre-trial motions, including motions to suppress evidence; the right at such trial to a
presumption of innocence; the right to require the Government to prove the entire case against
the defendant beyond a reasonable doubt; the right not to testify; the right not to present any
evidence; the right to be protected from compelled self-incrimination; the right at trial to confront
and cross-examine adverse witnesses; the right to testify and present evidence; and the right to
compel the attendance of witnesses. The defendant further understands that by this guilty plea,
the defendant expressly waives all the rights set forth in this paragraph. The defendant fully
understands that the defendant has the right to be represented by counsel, and if necessary, to
have the Court appoint counsel at trial and at every other stage of the proceeding. The
defendant's counsel has explained these rights and the consequences of the waiver of these rights.
The defendant fully understands that, as a result of the guilty plea, no trial will in fact occur, and
that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel.
The defendant has reviewed the Government's evidence and discussed the Government's case and
all possible defenses and defense witnesses with defense counsel. Defense counsel has
completely and satisfactorily explored all areas which the defendant has requested relative to the
Government's case and any defenses.

14

## 9.    PRESENTENCE REPORT AND SENTENCING.

Following defendant's guilty plea, a Presentence Report will be prepared. At the time of

sentencing, the parties reserve the right to allocution regarding the appropriate sentence to be

imposed. Each party also reserves the right to bring any misstatements of fact made either by the

other party or on that party's behalf to the attention of the Court at the time of sentencing.

## 10.    STANDARD OF INTERPRETATION.

In interpreting this document, any drafting errors or ambiguities shall not automatically be

construed against any party, whether or not the party was involved in drafting this document.

## 11.    VOLUNTARY NATURE OF THE PLEA AND THE PLEA AGREEMENT, RECOMMENDATIONS AND STIPULATIONS.

This document constitutes the entire agreement between the defendant and the

Government, and no other promises or inducements have been made, directly or indirectly, by

any agent of the Government, including any Department of Justice attorney, concerning any plea

to be entered in this case or the agreements, recommendations or stipulations contained herein.

In addition, the defendant states that no person has, directly or indirectly, threatened or coerced

the defendant to do or refrain from doing anything in connection with any aspect of this case,

including entering a plea of guilty. The defendant's agreements, recommendations and

stipulations as set forth above are made in exchange for the United States' agreements,

recommendations and stipulations set forth in this document.

The defendant acknowledges that the defendant has voluntarily entered into both this plea

and agreements, recommendations and stipulations. The defendant further acknowledges that

this guilty plea is made of the defendant's own free will because the defendant is, in fact, guilty of

15

the conduct specified in sections four and five above.

**12.    CONSEQUENCES OF FURTHER CRIMINAL CONDUCT OR WITHDRAWAL
OF PLEA BY DEFENDANT.**

The defendant agrees that if the defendant engages in any criminal activity between the

time of signing this document and the sentencing, the Government shall be released from any

obligations or limits on its power to prosecute the defendant created by this document, and any

such conduct shall be grounds for the loss of acceptance of responsibility pursuant to Section

3E1.1.

Further, by this plea and in the event this plea is ever withdrawn, the defendant waives

the protection of Rule 11(f), Federal Rules of Criminal Procedure, and Rule 410, Federal Rules

of Evidence.


5-24-04
_____
Date

DOROTHY L. MCMURTRY, #6703
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200


5-24-04
_____
Date

SAMS PRODUCE, INC.
Defendant


5-24-04
_____
Date

BEVIS SCHOCK
Attorney for Defendant
7777 Bonhomme Avenue, Suite 2300
(314) 726-6545 x227

16